## MRS. M. S. YOUNG V. PECOS COUNTY.

### Decided May 8, 1907.

**1.—County Treasurer—Misappropriation—Subrogation.**

Where a county treasurer used the county's money to discharge a mortgage lien on his wife's separate property the county will be subrogated to the rights of the mortgagee under the mortgage, and this even though the mortgage is formally released by the mortgagee.

#### ON REHEARING.

**2.—Assignment of Error—Proposition—Statement—Insufficiency.**

An assignment of error based upon the refusal of the trial court to suppress depositions on the ground that certain written memoranda referred to in the answers of the witness were not attached to said answers, will not be considered when it does not affirmatively appear from the assignment or the proposition thereunder or the statement that such memoranda or copies thereof were not in fact attached to the answers of the witness.

**3.—Same—Rule 31 Enforced.**

An assignment of error will not be considered when there is no statement or an insufficient statement subjoined in appellant's brief.

**4.—Liability for Money Received.**

One who receives money in any transaction, even though the money be stolen, is not liable to the true owner either for the specific money or its equivalent, unless he actually knows at the time of its receipt that it does not belong to him from whom it is received.

Appeal from the District Court of Val Verde County. Tried below before Hon. B. C. Thomas.

*R. P. Coon, A. H. Young* and *Griner & Foster,* for appellant.— There is not such a state of facts alleged by plaintiff in its fourth amended petition as would show, under the most favorable view, a cause of action entitling Pecos County to any judgment against the defendant, Mrs. M. S. Young, as an individual, or that would warrant the court in establishing any lien by subrogation and foreclosing the same against her separate estate. Richardson v. Hutchins, 68 Texas, 88; Stansbury v. Nichols, 30 Texas, 145; Continental Nat. Bank v. Weems, 69 Texas, 499; Cavil v. Walker, 7 Texas Civ. App., 307; Gossard v. Lea, 3 Texas Civ. App., 7; Blevins v.

Cameron, 2 Posey, U. C., 461; Parker v. Wood, 61 S. W. Rep., 941; Harrison v. City of Sulphur Springs, 67 S. W. Rep., 515; Therriault v. Compere, 47 S. W. Rep., 750; Frank v. Frank, 25 S. W. Rep., 819.

The petition alleging the payment, discharge and release, by the creditor to the debtor, of the debt and lien, which operated to extinguish and kill said debt and the lien incident thereto; equity cannot acquire jurisdiction of the case in order to decree subrogation and foreclosure in the absence of any allegations in the pleadings asking the court to revive and bring back to life the dead lien and debt, and to cancel and hold for naught the deed of release. Lewis v. Hatton, 86 Texas, 535; Barry v. Screwmen's Assn., 67 Texas, 254; City of Houston v. Emery, 76 Texas, 286; Edgar v. City of Galveston, 21 Texas, 302.

The court erred in overruling the defendant, Mrs. M. S. Young's general demurrer, filed by her as an individual, in that it nowhere appears from the plaintiff's petition that the defendant, Mrs. M. S. Young, received any of the money of Pecos County, or knew of or participated in her deceased husband's actions in paying off the debt of Thomas Trammell & Co. with funds belonging to Pecos County. Maddox v. Summerlin, 92 Texas, 487; Hudson v. Wheeler, 34 Texas, 369.

A mortgage after payment becomes *functus officio,* and neither the mortgagee nor anyone else has the power to transfer it as a subsisting security or to revive it to secure the payment of the same, or any other liability. Duty v. Graham, 12 Texas, 427; Perkins v. Sterne, 23 Texas, 563; Deussen v. Moegelin, 24 Texas Civ. App., 340; Jones on Mortgages (sixth edition), sec. 943, and authorities cited.

The debt having been paid off in full by F. W. Young, who was primarily liable to pay it and the creditor having, upon the payment of the debt, released the mortgage upon the separate estate of Mrs. M. S. Young, under these circumstances the doctrine of subrogation would not arise in favor of Pecos County, it being a stranger to the whole transaction, and there being at the time of payment no agreement between the mortgagor and mortgagee that Pecos County should be substituted to the rights of Trammell & Co. Oury v. Saunders, 77 Texas, 280; Faires v. Cockerell, 88 Texas, 434; Terry v. O'Neal, 71 Texas, 592; Gage v. Shaphard, 46 S. W. Rep., 840; Tarver v. Land Mort. Bank, 7 Texas Civ. App., 428; Perryman v. Smith, 32 S. W. Rep., 351; Furche v. Mayer, 29 S. W. Rep., 1099; Fievel v. Zuber, 67 Texas, 275; Huggins v. White, 7 Texas Civ. App., 567; Farmers,' etc. Bank v. Waco, etc., Ry., 36 S. W. Rep., 134; Jones Lumber Co. v. Villegas, 28 S. W. Rep., 558; City Bank v. Warrick, 28 S. W. Rep., 366.

*Geo. M. Thurmond, District Attorney,* for appellee.—Where the money of a county, in the hands of its county treasurer is misapplied and embezzled by such treasurer, and by him applied to the payment of a lien upon the separate estate of the wife of said treasurer,

the county becomes subrogated to the rights and remedies of the original lien holder and it is immaterial and unnecessary to allege and prove that the wife knew of the action of her husband in so misapplying and embezzling such funds and applying them to the payment of said lien. Rachal v. Smith, 101 Fed. Rep., 166; Oury v. Saunders, 77 Texas, 282; Darrow v. Summerhill, 24 Texas Civ. App., 214.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by Pecos County, through its County Judge, against the sureties on the official bonds of F. W. Young, deceased, as county treasurer of said county, and against the community estate of decedent and his surviving wife, M. S. Young, to recover the sum of $10,254.15, money of the county alleged to have come into the hands of F. W. Young as county treasurer, which he never accounted for to the county but fraudulently appropriated to his own use and benefit.

It was also alleged that on February · 3, 1903, F. W. Young, being indebted to Thos. Trammel & Co. upon a certain promissory note for $3,000 with interest accruing, his wife, M. S. Young, joined by him, executed a certain deed of trust, in the nature of a mortgage, upon four several surveys of land, each of 320 acres, which were her separate property, to secure the payment of such indebtedness; and that upon the maturity of said note F. M. Young, county treasurer, took $3,129 of the money in his hands as treasurer belonging to the county of Pecos and paid it to Thos. Trammel & Co., in settlement of the indebtedness due on said note and secured by the mortgage deed of trust made by his wife upon her separate property; and that upon such payment a release of the property from the trust deed was executed by Thos. Trammel & Co. The petition then alleges that, by reason of such facts, Pecos County is subrogated to the rights of Trammel & Co., under the mortgage, and has a lien upon the separate property of Mrs. Young covered by it to secure the payment of its money wrongfully taken by her husband and appropriated by him to the payment of the debt it was mortgaged to secure.

Mrs. M. S. Young, in her individual capacity, answered that part of the petition by which it was sought to subject her separate property embraced by said mortgage to plaintiff's debt, by a general demurrer, a general denial, and specially denied that the debt to Trammel & Co. was paid off by her husband with funds belonging to Pecos County.

The case was tried before a jury and, upon the verdict, judgment was entered in favor of the plaintiff for the sum of $8,349.55, which, to the extent of $3,120, decreed a lien upon the four several tracts of land of the separate property of Mrs. Young and ordered them sold to satisfy that much of the judgment. She alone has appealed; and prosecutes her appeal from that part of the judgment which subjects her said separate property to the satisfaction of any part of it.

*Conclusions of Fact.*—The evidence shows that on the 3d day of February, 1903, the appellant, M. S. Young, joined by her husband, F. W. Young, executed and delivered to R. A. Ragland, trustee, for the use and benefit of Thos. Trammel & Co., a deed of trust upon certain lands described in plaintiff's petition, which were of her separate estate, to secure Trammel & Co. in the payment of a certain promissory note of $3,000 executed by her husband; that on the 13th day of January, 1904, F. M. Young, who was at the time county treasurer of Pecos County, and by virtue of his office was the custodian of the funds of said county, took $3,120 of the county's money without its knowledge or consent, and paid it to Trammel & Co. in settlement of the amount, principal and interest, due on said note. Whereupon Trammel & Co. executed a writing purporting upon its face to release said lands of appellant from said deed of trust. The amount of the county's money thus appropriated, nor any part thereof has ever been refunded by anyone to the county.

*Conclusions of Law.*—The assignments of error in different forms raise the question: Whether, under the facts alleged and proved, the county was subrogated to the mortgage lien of Trammel & Co. as security for its money used in paying off the indebtedness it was made to secure? It is needless to say that the question thus arising from the facts, has never appeared in any case decided on appeal in this State. And the writer has been unable to find a case anywhere decisive of the question here presented. Therefore, it will have to be determined from elementary principles, and cases bearing such analogy to it as may aid us in its solution.

We shall not enter into any extended consideration of the doctrine of subrogation or the principles of equitable assignments, but shall at once state the law we consider applicable to the question.

"Under some circumstances," says Pomeroy's Equity Jurisprudence, sec. 1211, "the payment of the amount due on a mortgage, when made by certain classes of persons, is held in equity to operate as an assignment of the mortgage. By means of the payment, the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof preserved for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of

the mortgage as being kept alive, either wholly or in part, for his security and benefit." Thus, one having no previous interest, and being under no obligation, who pays off a mortgage, or advances money for its payment, at the instance of a debtor party and for his benefit, is in no true sense a stranger and volunteer, and becomes equitably entitled to keep alive and enforce the lien so far as it may be necessary for his own benefit. Pom. Eq. sec. 1213; First Nat. Bank v. Ackerman, 70 Texas, 320; Oury v. Saunders, 77 Texas, 282; Darrow v. Summerhill, 24 Texas Civ. App., 208; Rachal v. Smith (Texas Case—5th Circuit), 101 Fed. Rep., 166.

It seems to us that, under the peculiar facts in this case, the appellee should be viewed by the eye of equity as standing in the most favorable position that an individual could, even by agreement, place himself in regarding his money that has been appropriated by a debtor to pay off a debt secured by a mortgage lien. F. W. Young was appellee's treasurer and the legal custodian of its money, holding it as its trustee, to be paid out, only for the purposes for which it was collected by taxation from the people, in accordance with law. The county itself could not divert it from the purpose for which it alone was authorized to levy and collect it. Nor, in any way, authorize him to appropriate it to the payment of his indebtedness; nor could it, in any manner, ratify or sanction such a misappropriation of its funds. After Young applied it to the payment of his debt to Trammel & Co., it was still the money of Pecos County; and they, though they may have thought it was Young's money, became the debtors of the county for the money so received. The debt the mortgage was given to secure was not extinguished. And it would seem, from the equitable principles quoted, that the county should be subrogated to all the rights of Trammel & Co. to enforce its payment, which would include the mortgage security given by the appellant. This right of the county is one purely in equity to be subrogated to the mortgage, and it arises, not out of possession of the mortgage, or its being cancelled or uncancelled, or formally released, but out of the fact that the payment of the debt it was given to secure was made with appellee's money. Kinkead v. Ryan, 53 Atl. Rep., 1053; Lashua v. Myhre, 93 N. W., 811.

It is certain that if the county had sued Trammel & Co. for money had and received, they would have had the right to recover over against Young's estate on the original indebtedness and to foreclose the mortgage given by his wife to secure its payment. This being so, no reason can be perceived why the county could not, without resorting to a recovery against them of its money, as in this case, resort directly to the security given Trammel & Co. for the debt which was paid with its money.

By subrogating appellee to the rights of Trammel & Co. under the mortgage, the appellant is placed in no worse position than she would have been had her husband not misappropriated the county's money in the payment of a debt she had mortgaged her separate property to secure; for had it not been for such misappropriation her property would be charged with the payment of

the debt. And it seems to us inequitable to give her the advantage of her husband's fraud by releasing her property from a debt it was mortgaged to secure, upon the ground it was satisfied by his misappropriation of the trust funds in his hands of Pecos County. The judgment is affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

In this motion it is claimed that several assignments of error urged by appellant were not considered, and it is insisted that they be passed upon now. While such assignments received due consideration before the conclusions expressed in the original opinion were reached, and their disposition adversely to appellant was necessarily involved, they were not *eo nomine* referred to, but they will be so now and our reasons given for overruling them.

Assignments of error from thirteen to seventeen, which complain of the admission of certain evidence in each respectively referred to, were disposed of before arriving at our conclusions of fact. Of this group of assignments, the thirteenth complains that the court erred in overruling defendant's motion to suppress the depositions of W. T. Trammel taken on the 27th of March, 1906. The only proposition advanced under the assignment is that, "When a witness testifies by deposition, and his answers show that he testified from books or memoranda, or that he had used such memoranda in his answers, the original or certified copies of such entries or such memoranda should be attached to the deposition, and upon failure to do so the deposition should be suppressed."

·It is provided by article 2284, Rev. Stats. (29 Leg. p. 108), "That it shall not be lawful for the witness, while answering such interrogatories and cross-interrogatories to use or refer to any memoranda or writing, except such as under the rules of evidence he would be permitted to use and refer to if testifying as witness in open court, and any memoranda or writing so used or referred to by said witness, or a certified copy thereof, properly marked for identification by the officer taking such deposition shall be attached to and returned with such answers; and provided further, that if at any time after such deposition has been filed it shall be made to appear that any of the provisions of this article have been violated, such deposition shall be suppressed at the cost of the party guilty of such violation." It will be observed that, while the proposition quoted is an enunciation of the law as thus enacted, neither the assignment nor proposition asserts its infraction; for neither asserts that the original or certified copies of such entries or such memoranda as may have been used or referred to by the witness, was not attached to and returned with his answers by the officer taking the deposition. If, however, it can be said that the proposition involves such an assertion, when we look to the statement in appellant's brief subjoined to the proposition, the assertion is not supported. While the statement shows that the answers of the

witness refer to certain memoranda, it nowhere appears therefrom that the original or copies of such memoranda were not attached to and returned with the answers as required by the statute quoted. Wherefore the thirteenth assignment of error was not considered further than to ascertain that it was not entitled, to consideration under the rules of this court. Poland v. Porter, 98 S. W. Rep., 215; Scanlon v. G. H. & S. A. Ry. Co., 100 S. W. Rep., 982.

The fourteenth assignment of error is: "The court erred in admitting in evidence in this case the answers of the witness W. T. Trammel, made to direct interrogatories Nos. 10, 11, 12, 13, 14 and 15, in said Trammel's deposition, as shown by defendant's bill of exception." The propositions advanced under it are: (1) "The witness could not testify over objection of defendant to entries made in books without first showing that he either made the entries, or that he knew them to be correct, and any answers he might make as to what such entries were would be only hearsay and the conclusion of the witness;" and (2) "the witness could not testify from the contents of letters, over objection. The letters are the best evidence and should have. been attached to the answers." While, ordinarily, each of the propositions asserts a correct principle of law, neither is supported by the statement subjoined to it in the brief of appellant, as required by rule 31 of this court; nor does such statement as is made, seem to be supported by the record to which it refers for its verification. For this reason the assignment was overruled.

The fifteenth assignment of error complains of the court's admitting in evidence over the objection of defendant the release purporting to have been executed by "Thomas Trammel & Co., by W. T. Trammel, Cashier." We are not informed by either the propositions under the assignment nor the subjoined statement, what deed of trust the release referred to. But assuming that it was the one made by Young and wife to secure Thomas Trammel & Co., the defendant could not have been prejudiced by the introduction of the release in evidence; for, as between appellant and the appellee, it would make no difference whether such deed of trust was released or not. Even though it had been formally released by the beneficiaries of the trustee, under our view of the case, the deed of trust still bound the property, and the payment of the debt it was given to secure by Young with the money of Pecos County was, in effect, an equitable assignment of the deed of trust to the county, although, as between the parties, such payment operated as a release of the lien. It is for this reason the assignment was overruled.

There is no cognation between the sixteenth and seventeenth assignments, and as they are grouped, and but one proposition asserted under them, which has no relation to them, they are not entitled under the rules of this court to consideration. Besides, the statement subjoined is so meager, we are not able to say whether the ruling of the court complained of by either assignment was erroneous. Therefore, both are overruled.

This brings us to a reconsideration of the main question in the case: Whether, under the facts alleged and proved, the county was subrogated to the mortgage-lien of Trammel & Co. as security for its money used in paying off the indebtedness it was made to secure? However, before doing so, we wish to correct an expression made *arguendo* in our original opinion, which, though not called to our attention by the motion, upon further reflection we are convinced is wrong. It is this: "After Young applied it" (referring to the money of Pecos County) "to the payment of his debt to Trammel & Co., it was still the money of Pecos County; and they, though they may have thought it was Young's money, were debtors to the county for the money so received." Money being the medium of exchange established by law, as well as by custom among men and nations, to perform its functions must circulate freely unembarrassed by suspicion or inquiry as to its ownership by him who tenders it in payment of a debt, or in any transaction where its use is required or permitted; and unless the one by whom it is received in any such transaction actually knows at the time that it is not the money of him from whom it is received, it becomes his absolutely and he is not liable to him who was its real owner before he received it, even though it were stolen, either for the specific money received or its value. Therefore, unless Trammel & Co. actually knew at the time they received it that the money used by Young in paying off the mortgage debt was the money of Pecos County, the debt, as between the parties thereto, was discharged, and the money became their money unaffected by its prior ownership by the county, and no action could be maintained by the county against Trammel & Co. for money had and received; yet, nevertheless, we are of the opinion that the payment of the debt with the money of Pecos County operated as an equitable assignment of it, together with the mortgage given for its security, to Pecos County. A person who has paid a debt at the request of a debtor, and under circumstances which would operate as a fraud upon him if the debtor were afterwards allowed to insist that the security for the debt was discharged by his payment, is subrogated to the security as against the debtor. Whiteselle v. Texas Loan Agency, 27 S. W. Rep., 309. While, in the case before us, Pecos County did not, strictly speaking, pay Young's debt, it seems to us that, as it was paid with the county's money in his hands as its trustee, it should, if essential to its rights to subrogation, be regarded as having been paid by the county. If so regarded, then the county is in the attitude of one who, at the instance of the debtor, advances money to pay off a debt secured by a mortgage, who is subrogated to the mortgage security. By such subrogation the appellant is placed in no worse position than she would have been had not her husband used the county's money to pay off a debt secured by a mortgage upon her separate property. It doesn't seem just or equitable that she should reap any advantage from her husband's fraud; but, on the contrary, the consequence of it should be held to be an equitable assignment of the debt, and the mortgage, as an incident to the debt, to Pecos County; and that a

judgment in favor of the county foreclosing such mortgage and subjecting it to such indebtedness is only just and equitable. Therefore, the motion for rehearing is overruled.

*Overruled.*

Writ of error refused.