44 321|
120 362

MICHIGAN AIR LINE RAILWAY CO. v. HARVEY MELLEN ET AL.

*Railroad aid bonds—Accounting—Payment—Deed to trustee.*

Township aid bonds were delivered by a railroad company to one of its directors to pay for depot buildings which he had put up and agreed to convey, but did not do so. *Held*, on a bill for an accounting, that he should be charged with the bonds.

Where several persons either as co-partners or joint contractors had done work under an agreement with a railway company, a payment made to one of them in township aid bonds binds the rest if with full knowledge of the facts they decline to repudiate the payment and make a distinct claim upon the company.

Creditors who have received bonds in payment cannot retain them and question their validity or value at the same time; if they wish for a payment in cash they must give up the bonds.

A creditor cannot keep money paid to him to satisfy any claim but that on which it was actually paid, unless his debtor consents.

A debtor when making a payment has the right to direct its application, and the creditor cannot refuse to apply it accordingly and credit it on some other account.

It is a fraud upon the rights of a railway corporation if a director who buys lands for the use and benefit of the company and pays for them with its funds, takes the title in his own name or jointly with others; and the nominal grantees would hold in trust for the company.

Appeal from Macomb. Submitted April 8. Decided October 13.

BILL FOR ACCOUNTING : to compel a conveyance of the premises to complainant; to compel the delivery of certain bonds to complainant ; and to enjoin defendant from suing in ejectment for the premises referred to in the bill. Complainant appeals. Reversed.

*Irving D. Hanscom* and *Ashley Pond* for complainant.

*Dwight N. Lowell, A. B. Maynard* and *James B. Eldridge* for defendants.

MARSTON, C. J.   From the evidence we find the following facts in this case :

Defendant Harvey Mellen was director of the Michigan Air Line Railroad Co.—complainant company having acquired its rights and property by purchase—and as such director he had charge of the eastern end of the company's road, negotiated and acquired for it right of way and depot grounds, and acted for the company quite generally.

Other directors of the company acting with Mellen had agreed that certain lands should be purchased from the Bailey heirs for depot grounds in the village of Romeo, and Harvey Mellen agreed to negotiate for and purchase such grounds. He with the assistance of a brother and John Phelps succeeded in purchasing the lands, and the title thereto was taken in their joint names as owners. Phelps afterwards conveyed his interest to defendant Tackles. Defendants erected a depot building upon these grounds and other work was done by them, and they now claim that the Railroad Company must pay them the value of such improvements, and the price paid by them for the land to the Baileys, when they will convey to the company, subject to certain rights which they claim they were to have in and to an elevator and lime house which they erected on their own account upon these grounds under an agreement with the company.

These depot grounds purchased from the Baileys were purchased by Harvey Mellen acting as a director and paid for by him in bonds belonging to the company drawn out of the bank where deposited for that purpose. This seems too clear to be really open to dispute. The small amount paid in cash—less than $100—the difference between the face of the bonds and the price of the land, is not worthy of notice in this connection. It does not appear that either of the other parties, John Phelps or John N. Mellen, put one dollar into the land. We also find as a fact that Harvey Mellen afterwards received from McNaughton, managing director of the company, twenty-five hundred dollars in township aid bonds, which at their par value was more than sufficient to pay for depot buildings and other improvements; that when he received these bonds he agreed that a deed to the company, if not then executed, would be and be delivered and

recorded, which was not done. These bonds he still retains or the proceeds thereof, and should be charged therewith. The building having been erected under an agreement with the company, whether the defendants were copartners or joint contractors, in either event Harvey Mellen would have a right to receive payment from the company therefor and bind the others thereby. Whether he could bind them by taking anything else but cash we need not at present determine, as they, with full knowledge of the facts, made no distinct claim upon the company, in repudiation thereof, for a long period thereafter. The authority of Harvey Mellen to represent his associates is not seriously questioned. All the defendants concur in saying that the bonds were not accepted, as they wanted the money and were uncertain as to the value or validity of the bonds. They could not, however, retain the bonds and at the same time question their validity or value. If they desired to have the company pay them the amount due, in cash, they should have surrendered up the bonds, but this was not done. It is true Harvey Mellen says he claimed to hold these bonds upon another claim he had against the company. This, however, he could not do without the consent of the company thereto. Having received them to apply upon one claim, he could not refuse so to apply them and credit them to some other account. The debtor had the right at the time of making the payment to direct the application. This was done, they were delivered to apply on the amount due the defendants, and they could not refuse to so receive them, and yet retain and apply them upon an individual account without the debtor's assent.

Harvey Mellen as a director of the company could not purchase lands for its use and benefit, and pay for the same with the funds of the company, and at the same time, without authority, take the title thereto in his own name or jointly with others, as in this case. Such would be a fraud upon the rights of the company, and they would hold the title in trust for the company.

The company and defendants have been in the joint possession of this property, and defendant's possession must be

held a sufficient compensation for the taxes and insurance they have had to pay, especially as their holding was wrongful.

Under their original agreement they were to have an exclusive right to build and use an elevator and lime house. Such a building they have erected, and they should be protected in their rights thereto in accordance with the agreement.

The decree below must be reversed with costs of both courts and one entered here in accordance herewith.

The other Justices concurred.